# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER BENNETT, on behalf of herself and her minor children, : : | |
| Plaintiff : | CIVIL ACTION NO. 3:12-CV-1912 |
| v. : | (JUDGE MANNION)[1] |
| SUSQUEHANNA COUNTY CHILDREN AND YOUTH SERVICES, SUSQUEHANNA COUNTY, : : : | |
| Defendants : : | |

## MEMORANDUM

Pending before the court is the defendant's motion to dismiss. (Doc. No. 7). Based upon the court's review of the motion and the materials related thereto, the motion to dismiss will be **GRANTED** with respect to Counts 1 through 9 and 11. Count 10 will be **DISMISSED** without prejudice to re-filing in state court.

## I. FACTUAL BACKGROUND

The instant action arises from the allegedly unlawful seizure and withholding of two minor children from the care and custody of their mother, the plaintiff, on or about November 18, 2009. (Doc. No. 2). On November 17,

---

[1] The instant action was originally assigned to the Honorable A. Richard Caputo. Pursuant to the verbal order dated January 7, 2013, the matter was reassigned to the undersigned.

1

2009, plaintiff brought one of her children, Minor Child B, to the emergency room of a local hospital with complaints of a cough and fever. (Doc. No. 11 at 2). During a medical examination, the doctor and nurses noticed that the child had "bruising over the thoracolumbar region and hemorrhage." (Doc. No. 2 at 3). Additional x-rays disclosed a supracondylar fracture of the right distal humerus head. (Doc. No. 2 at 3). As a result of this diagnosis, the child was hospitalized and the hospital contacted Susquehanna County Children and Youth Services (hereinafter "SCCYS"). (Doc. No. 2 at 3). SCCYS subsequently proposed a safety plan where after Minor Child B's release from the hospital, both of the plaintiff's children, Minor Child A and Minor Child B, would be placed under the care of their paternal grandmother, Allison Reaves. (Doc. No. 2 at 3). Under the plan, the plaintiff would have limited visitation rights. Id. The plaintiff signed the safety plan on November 18, 2009. (Doc. No. 2 at 3). Upon Minor Child B's release from the hospital, SCCYS immediately placed both of the plaintiff's children in the custody of their paternal grandmother. (Doc. No. 2 at 3). Despite the plaintiff's objections, the children remained in the custody of their paternal grandmother until December 30, 2011, when the plaintiff regained physical custody on her own behalf. (Doc. No. 2 at 3-4).

## II. PROCEDURAL BACKGROUND

On September 25, 2012, the plaintiff filed a complaint containing eleven counts against Susquehanna County (hereinafter "the County") and SCCYS.

2

(Doc. No. 2). Counts 1 and 5 of the complaint allege a Fourteenth Amendment procedural due process violation concerning both minor children. Counts 2 and 6 allege unlawful searches and seizures under the Fourth Amendment for both minor children. Counts 3 and 7 assert substantive due process violations under the Fourteenth Amendment concerning both minor children. Counts 4 and 8 allege that both minor children were deprived of their liberty in violation of the Fifth Amendment. In Count 9 the plaintiff asserts both that the defendant's actions resulted in Intentional Infliction of Emotional Distress ("IIED"), which is a state law claim, and that the defendant's actions allegedly constituted cruel and unusual punishment for both minor children in violation of the Eighth Amendment, a federal claim. In Count 10, the plaintiff alleges a failure to carry out the provisions of 42 Pa.C.S.A. §6301, also known as the "The Juvenile Act." Finally, in Count 11, the plaintiff alleges that she is entitled to punitive damages.

On November 2, 2012, the defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and a brief in support of that motion. (Doc. Nos. 6,7). The defendants argue both that the plaintiff has failed to comply with the statute of limitations and that the plaintiff has failed to state a claim upon which relief can be granted for all counts. On December 28, 2012, the plaintiff filed a brief in opposition to the motion to dismiss arguing that the complaint was timely, that her claims were adequately pled, and that the court should retain jurisdiction over the Juvenile Act claim. (Doc. No. 11). On January 18, 2013, the defendant filed a reply brief. (Doc. No. 14).

On July 16, 2013, the court directed both the plaintiff and the defendant to file a supplemental brief concerning the legal issues underlying the statute of limitations. (Doc. No. 22). On July 17, 2013, the plaintiff submitted her brief, and on July 22, 2013, the defendant submitted its brief. (Doc. No. 23, Doc. No. 24). On August 21, 2013, the plaintiff filed a motion to file the plaintiff's deposition transcript. (Doc. No. 25). Satisfied that the proffered reasons would have no impact upon the court's statute of limitation analysis, that motion is denied.

The plaintiff correctly states that this court has subject matter jurisdiction over the §1983 claims pursuant to 28 U.S.C. §1331 and §1343 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

**III. STANDARD OF REVIEW**

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language

4

found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965.This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250,

1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## IV. DISCUSSION

The plaintiff brings this action alleging deprivations of her and her children's federally protected rights under 42 U.S.C. §1983 as well as state law claims for IIED and violations of Pennsylvania's Juvenile Act against both SCCYS and the County.

First, this court finds that all of the plaintiff's claims brought under 42 U.S.C. §1983 as well as the plaintiff's claim for intentional infliction of emotional distress are barred by the statute of limitations. Second, since the plaintiff's federal claims are barred, this court will not exercise supplemental jurisdiction over the plaintiff's remaining state law claim. Finally, the plaintiff's claim for punitive damages will be dismissed as both moot in light of the dismissal of the claims and as contrary to law.

Section 1983 claims are governed by the relevant state's statute of limitations for personal injury actions. *See* Hall v. City of Philadelphia, 828

6

F.Supp 365 (E.D.Pa. 1993)(citing Wilson v. Garcia, 471 U.S. 261, 280(1985)); *see also* Kirk v. Varano, 2013 WL 2285235 (M.D.Pa. May 23, 2013)(non-precedential). Therefore, Pennsylvania's two-year statute of limitations for personal injury claims is applied here. *See* Hall, 828 F.Supp. at 367(citing 42 Pa.C.S.A. §5524(2)). Similarly, under Pennsylvania law any claim alleging the commission of an intentional tort, including IIED claims, are "subject to a two-year statute of limitations." Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989). When state law controls the period of limitations, federal law determines when a cause of action accrues and the statute begins to run. *See* Id. (citing Antonioli v. Lehigh Coal and Navigation Company, 451 F.2d 1171, 1175 (3d Cir. 1971) *cert. denied,* 406 U.S. 906 (1972)). Under federal law, a cause of action accrues, and the statute of limitations begins to run, upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong. *See* Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 287 (3d Cir. 2003)(citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994); Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982), abrogated on other grounds by Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997). An individual must either actually be aware of the existence and source of the injury, or merely should have been aware of the injury. *See* Oshiver, 38 F.3d at 1386.

When a federal court applies a state's statute of limitations, state tolling principles are also to be followed as long as such principles are not inconsistent with federal policy. *See* Hall, 828 F.Supp. at 367 (citing Vernau

v. Vic's Market, Inc., 826 F.2d 43, 45 (3d Cir. 1990)). In this matter, neither party contends that Pennsylvania tolling principles conflict with federal policy. Despite any harsh circumstances that may be visited upon the plaintiff, limitations periods must be strictly construed. *See* Id. (citing Barren v. United States, 839 F.2d 987, 992 (3d Cir. 1988)).

The plaintiff's claim for relief arose out of the allegedly unlawful seizure and withholding of her two minor children which began on November 18, 2009. (Doc. No. 2). Since the complaint was filed on September 25, 2012, the plaintiff is barred from seeking relief which stems from any activity occurring before September 25, 2010 under Pennsylvania's two-year statute of limitations.

The plaintiff alleges that when her children were removed from her custody and placed with another individual, she "almost immediately ... objected to the placement ... and demanded ... full custody and possession of the minor children." (Doc. No. 2 at 4). By the plaintiff's own admission, she knew of the injury when her children were taken from her. The statute of limitations therefore began to run at the point when the plaintiff was aware of the injury, even if she was not aware of the particular legal claims surrounding the injury. The plaintiff also signed a "safety plan" which explicitly stated that her child would stay with a designated care-taker and that she would have limited visitation rights. (Doc. No. 8, Ex. A). The plaintiff's signature appeared under a caption that indicated her agreement with the provisions of the plan. Id. Since the plaintiff became aware of the removal of her children on

8

November 18, 2009, she is barred from pursuing the §1983 claims which were filed on September 25, 2012.

In response, the plaintiff alleges that she is still entitled to relief under the continuing violations doctrine.[2] The continuing violations doctrine states that when the wrongs committed to an individual are ongoing, the statute of limitations should be tolled. *See* Swift v. McKeesport Housing Authority, 726 F.Supp.2d 559, 568 (W.D.Pa. 2010). The continuing violations doctrine is an "equitable exception" to the timely filing requirement. Id. (citing Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). Courts in the Third Circuit consider the doctrine to be a narrow exception that is "often invoked but infrequently applied." Swift, 726 F.Supp 2d at 568.

The continuing violations doctrine focuses on the "affirmative acts of the defendants." Cowell, 263 F.3d at 293. The continuing violations doctrine only applies to continual unlawful acts, not continual ill effects from an original violation. *See* Id. The Cowell court, for example, found that plaintiffs' §1983 claims were barred because the mere continual existence of municipal liens did not amount to "continual unlawful acts." *See* Id.

In this matter, the plaintiff has failed to allege additional affirmative actions beyond the initial taking of the children. (Doc. No. 12 at 11). While the

---

[2] In a supplemental brief submitted on July 17, 2013, the plaintiff mainly argued that the fact SCCYS continued to deny her access to her children constitutes an ongoing wrong and that she was unaware of any legal wrong until she saw a television special on CNN.(Doc. No. 23).

9

plaintiff argues that she demanded her children back after they had been removed from her custody, such an action indicates an affirmative action on her part, not on the part of the defendant. *See* Id. Since the plaintiff had actual notice of the cause of her alleged injuries on November 18, 2009, and there is no allegation that the defendant took any unlawful affirmative actions since then, the plaintiff is barred from pursuing her §1983 claims under Pennsylvania's two-year statute of limitations. The defendants' motion to dismiss will therefore be granted for all §1983 claims.

Likewise, and for the reasons stated above, the court also finds that the plaintiff was aware of the allegedly tortuous conduct underlying her IIED claim on November 18, 2009 and is similarly barred by the two-year statute of limitations. The defendant's motion to dismiss will be granted with respect to Count 9 to the extent it alleges intentional infliction of emotional distress.

As the §1983 claims will be dismissed, supplemental jurisdiction is no longer appropriate under 28 U.S.C. §1367. A district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. §1367(c)(2); *see also* Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005). In the absence of supplemental jurisdiction, this court does not have jurisdiction over the plaintiff's state law claim under the Juvenile Act. Count 10 of the Complaint will therefore be dismissed without prejudice for want of jurisdiction and may be refiled in state court.

In addition, the court notes that the Rooker-Feldman doctrine,[3] asserted by the defendants, does not apply to the state law claim in this instance. The Rooker-Feldman doctrine "preclud[es] lower court jurisdiction over claims that were actually litigated or 'inextricably intertwined' with adjudications by a state's court." Parkview Associates Partnership v. City of Lebanon, 225 F.3d. 321, 325 (3d Cir. 2000). Simply put, the Rooker-Feldman doctrine prevents lower federal courts from acting as an additional appellate court for state law actions. The Rooker-Feldman doctrine, however, "has no application to judicial review of executive action, including determinations made by a state administrative agency." Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 644 n.3 (2002). In this matter, SCCYS, as an official agency of Susquehanna County, was acting as a state administrative agency when it determined that it was not safe for plaintiff to retain custody of her children. There is no evidence on the record that its decision was reviewed by a Pennsylvania state court. As such, this court is not precluded from asserting jurisdiction over the matter under the Rooker-Feldman doctrine.

Finally, punitive damages will not be granted both in light of the dismissal of all claims and as a matter of law. It is well established that municipalities cannot be held liable for punitive damages under 42 U.S.C. §1983. City of Freeport v. Facts Concerts, 453 U.S. 247 (1981); *see also*

---

[3] A doctrine arising from the Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

11

Smith v. Borough of Dunmore, 633 F.3d 176, 183 (3d Cir. 2011)(stating that a municipality is immune from punitive damages under 42 U.S.C. §1983). Finding that punitive damages against municipalities are prohibited as a matter of law, that each of the plaintiff's constitutional claims is barred by the statute of limitations, and that the court lacks jurisdiction over the remaining state law claim, the court can not grant relief in the form of punitive damages as requested in Count 11.

## V. CONCLUSION

In light of the foregoing, the defendant's motion to dismiss will be **GRANTED** with respect to Counts 1 through 9 and 11. Count 10 will be **DISMISSED** without prejudice to re-filing in state court. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 26, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-1912-01.wpd